UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| ESTATE OF AVA DENISE GRANT, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 04-1680 (TFH) |
| ARMOUR PHARMACEUTICAL CO., et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

### MEMORANDUM OPINION

### INTRODUCTION

Plaintiff, the Estate of Ava Denise Grant ("Decedent"), filed a $50 million Complaint in the Superior Court of the District of Columbia on July 12, 2004, against Aldrich Chemical Company ("Defendant"), alleging breach of warranty, strict liability, negligence (survival action) and wrongful death. Compl. ¶¶ 27-35 (Case No. 5301-04). Pursuant to 28 U.S.C. §1446, Defendant removed the matter to this Court on September 30, 2004. [dkt. 1] Defendant moves to dismiss Plaintiff's claims, arguing that the applicable statutes of limitations have run under the District of Columbia's discovery rule, leaving Plaintiff without a cause of action. Def.'s Mot. Dismiss 10-14. Upon careful review of the parties' motions, oppositions, replies thereto, and the entire record herein, the Court will grant Defendant's motion to dismiss the breach of warranty,

-1-

strict liability and negligence (survival action) claims because Plaintiff's causes of action accrued under District of Columbia law on or about January 31, 1999, and the statutes of limitation therefore ran on or about January 31, 2002. As a result, the wrongful death claim stands alone without a viable underlying claim. Therefore, the Court will grant Defendant's motion to dismiss the wrongful death action as well.

## BACKGROUND

From January 1979 to May 1980, Decedent worked as a senior technician and laboratory research assistant for Meloy Laboratories in Springfield, Virginia. Compl. ¶¶ 7-8. During this time, Decedent worked with various dangerous and hazardous chemicals, including toluene and tritium. *Id*. ¶¶ 10-11. As her employer, Meloy Laboratories did not provide Decedent with any respirator protection, protective clothing, or other safety measures to reduce or eliminate Decedent's exposure to toluene. *Id*. ¶ 13. Defendant supplied Meloy Laboratories with the toluene, tritium, and other chemicals Decedent used. *Id*. ¶ 18. Plaintiff also alleges that the chemicals Defendant supplied were shipped without any warnings, safety instructions, abatement rules, or preventative measures to protect Decedent from the harmful and lethal effects of the chemicals. *Id*.

On or about January 31, 1999, Decedent discovered a lump in her breast, diagnosed as part of an angiosarcoma disease, a relatively rare form of cancer. 2001 Compl. ¶ 18 (Case No. 01-01499). On this date, Decedent discovered facts from which it was reasonably known to her that the exposure to toluene proximately caused her angiosarcoma. *Id*.

On January 25, 2001, Decedent filed a lawsuit in the Circuit Court for Prince George's

County, Maryland, against Meloy Laboratories and Defendant, naming each company's surviving corporate entities as defendants, claiming negligence and failure to provide a safe workplace, breach of warranties, and strict liability. 2001 Compl. After those defendants removed the case to federal court, Decedent voluntarily dismissed her case without prejudice on March 28, 2003. Notice Vol. Dismissal (Case No. 02-2382). On July 10, 2003, Decedent died of angiosarcoma. Compl. ¶ 26.

Plaintiff filed the instant lawsuit on July 12, 2004, in the Superior Court for the District of Columbia, and Defendant removed the case to the United States District Court for the District of Columbia on September 30, 2004. [dkt. 1] On March 1, 2006, the Court dismissed the case as to two of the defendants, leaving Aldrich Chemical as the only remaining defendant in the Complaint. [dkt. 12]

Plaintiff's causes of action include breach of warranty, strict liability, survival and wrongful death. The Complaint alleges: (1) Defendant did not label the chemicals as hazardous, did not provide instructions to Decedent on how to use the chemicals safely and, generally, failed to warn Decedent of the dangerous nature of working with toluene, tritium, and other chemicals sold and shipped by Defendant; (2) as a result of working with these chemicals in an unsafe manner, Decedent suffered from angiosarcoma disease in her breast and in her kidney; and, (3) as a result of the angiosarcoma, Decedent died.

On October 6, 2004, Defendant moved to dismiss Plaintiff's claims, arguing that under the District of Columbia's discovery rule, the applicable statutes of limitations ran on January 31, 2002, leaving Plaintiff without a cause of action on July 12, 2004.

**DISCUSSION**

I.    **APPLICABLE LEGAL STANDARDS**

Defendant moves to dismiss under Rule 12(b)(6), Fed. R. Civ. P., or, in the alternative, for summary judgment under Rule 56, Fed. R. Civ. P.

    A.    **Motion to Dismiss for Failure to State a Claim**

To prevail on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A court must liberally construe the alleged facts in favor of the plaintiff, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C. 1994); see also *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citing *Gibson*, 355 U.S. 41, 45-46). In deciding a motion to dismiss, "the court may consider extra-record materials, such as matters of public record and previous filings with the Court." *Jacobsen v. Oliver*, 201 F.Supp.2d 93, 110 (D.D.C. 2002) (citing *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1222 (D.C. Cir. 1993); *Philips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C. Cir. 1979) (when considering a motion to dismiss, "the court may properly look beyond the complaint only to items in the record of the case or to matters of general public record").

II.    **APPLICABLE LAW**

As diversity is the basis of this Court's subject matter jurisdiction, the Court must apply the law that would be applied in the District of Columbia, including the statutes of limitations.

*Guaranty Trust Co. v. York*, 326 U.S. 99, 112 (1945); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  As such, The District of Columbia's choice-of-law rules determine the governing statutes of limitations for this matter.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  District of Columbia courts hold that, as a procedural issue, a statute of limitations is governed by forum law.  *Hodge v. Southern Railway Co.*, 415 A.2d 543, 544 (D.C. 1980) (holding that the law of the forum, and not the locus of the injury, governs the statute of limitations); *May Department Stores v. Devercelli*, 314 A.2d 767, 773 (D.C. 1973) (holding that the District of Columbia applies its forum law when presented with procedural issues).  Thus, this Court will apply the District of Columbia's statutes of limitations.

### III.   BREACH OF WARRANTY, STRICT LIABILITY, AND SURVIVOR ACTION CLAIMS

The District of Columbia requires plaintiffs to bring breach of warranty, strict liability, and survivor action claims within three years "from the time the right to maintain the action accrues."  D.C. Code § 12-301(8).  Though a plaintiff's cause of action ordinarily accrues at the time he suffers the alleged injury, the District of Columbia applies the discovery rule to determine the applicable accrual date in cases where the plaintiff is unaware of his injury at the time it occurs.  *Burns v. Bell*, 409 A.2d 614, 615-18 (D.C. 1979).  Under the discovery rule, "a cause of action accrues when the plaintiff must know or by the exercise of reasonable diligence should know (1) of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Nelson v. Am. Red Cross*, 26 F.3d 193, 196 (1994); *Colbert v. Georgetown Univ.*, 641 A.2d 469 (1994).  Once a plaintiff's cause of action accrues, the statute of limitations begins to run for all

claims arising from the allegedly tortious conduct, including for injuries not yet suffered. *Baker v. A.H. Robins Co., Inc.*, 613 F.Supp. 994, 996-97 (D.D.C. 1995); *Colbert,* 641 A.2d at 473.

Construing the facts in favor of the non-moving party, this Court concludes that the breach of warranty, strict liability, and survival action claims are time-barred. On January 25, 2001, Decedent filed a Complaint against Defendant in Prince George's County, Maryland, and stated: "[o]n or about January 31, 1999, [Decedent] discovered facts from which it was reasonably known that her exposure to toluene proximately caused her angiosarcoma." 2001 Compl. ¶ 18(b). The 2001 Complaint is a public record that the Court may examine when considering a motion to dismiss. *Jacobsen*, 201 F.Supp.2d at 110; *Shalala*, 988 F.2d at 1222; *Philips*, 591 F.2d at 969. Thus, applying the District of Columbia's discovery rule and by virtue of Decedent's own admission, Plaintiff's causes of action accrued on January 31, 1999, when Decedent learned of her injury, the cause of her injury, and knew or should have known that Defendant's packaging of the chemicals might constitute wrongdoing. Pursuant to Rule 41, Fed. R. Civ. P., a voluntary dismissal without prejudice leaves the parties as if the action had never been brought and as a result, statutes of limitations are not tolled even if the initial filing was made within the proscribed statutory period. *Haislip v. Riggs*, 534 F.Supp. 95, 98 (W.D. NC 1981); *Braxton v. Virginia Folding Box Co.*, 72 F.R.D. 124, 126 (E.D. Va. 1976).[1] Plaintiff voluntarily dismissed the 2001 Complaint on March 28, 2003. Thus, the statutes of limitations were not tolled by the 2001 filing, and the statutes of limitations ran on January 31, 2002.

---

[1]Superior Court Civil Rule (SCR) 41(a) is identical to Federal Rule of Civil Procedure 41(a) except for the substitution of "applicable statute" for "statute of the United States." Super. Ct. Civ. R. 41, comment. Therefore, the Court need not examine whether the Rule is substantive or procedural to determine which Rule governs. Under either rule, statutes of limitations are not tolled by a filing that is subsequently voluntarily dismissed.

Responding to Defendant's motion, Plaintiff argues that "there is no way for [Decedent] to have discovered . . . facts from which it was reasonably known that her exposure to toluene <u>alone</u> proximately caused her angiosarcoma." Pl.'s Opp'n. Mot. Dismiss 8.  However, a statute of limitations begins to run on the date that an injured party discovers "some" evidence of wrongdoing.  *See Baker*, 613 F.Supp. at 996 (holding that a plaintiff need not be absolutely certain of potential future injuries, but that she need only be aware that she has suffered an injury and that a defendant's behavior "was the likely cause of that injury").  Decedent declared in the 2001 Complaint:

> On or about January 31, 1999, plaintiff discovered facts from which it was reasonably known that her exposure to Toluene proximately caused her angiosarcoma.  The negligent actions of defendant Sigma-Aldrich and this defendant's failure to include adequate and meaningful safety warnings to foreseeable commercial, Federal contract laboratory users of Toluene such as plaintiff, were the legal, proximate, direct, factual, and independent cause of plaintiff's contracting angiosarcoma, a dangerous and potentially fatal condition that has also reduced the life expectancy of plaintiff.

2001 Compl. ¶¶ 18(b)-19(a).  These declarations make clear Decedent knew of at least *some* evidence of alleged wrongdoing as of January 1999.  Because Plaintiff does not provide any evidence to refute that Decedent knew of at least some evidence of wrongdoing,[2] Plaintiff fails to provide any evidence to refute Defendant's statute of limitations argument.

Alternatively, Plaintiff contends that its claim is not time-barred because the Decedent suffered additional injuries after the institution of the 2001 Complaint, allegedly caused by approximately the same tortious behavior that caused the initial injury.  Pl.'s Opp'n. Mot. Dismiss 6-7.  Plaintiff's argument is unsupported by the relevant case law.  This Court, applying

---

[2]Moreover, by arguing that there was no way for Decedent to know toluene <u>alone</u> proximately caused the injury, Plaintiff implicitly acknowledges Decedent knew of at least *some* evidence of alleged wrongdoing.

District of Columbia law in a product liability case, found that the fact that an injured party did not, at the time of accretion, "comprehend the full extent of *all* possible sequelae does not matter, for the law of limitations requires only that she have inquiry notice of the existence of a *cause of action* for personal injury." *Baker v. A.H. Robins Co.,* 613 F. Supp. 994, 996 (D.D.C. 1995). Similarly, here Decedent had inquiry notice as to the existence of a cause of action for personal injury on or about January 31, 1999. Plaintiff argues that the rare nature of angiosarcoma precluded Decedent from identifying future injuries as reasonably foreseeable. The discovery rule, however, does not make such an exception.

As the court explained in *Colbert*, the discovery rule "does not permit a plaintiff who has information regarding a defendant's negligence and who knows that she has been significantly injured, to defer institution of suit and wait and see whether additional injuries come to light." *Colbert,* 641 A.2d at 473. The District of Columbia adopted the discovery rule to provide injured plaintiffs an opportunity to recover in situations where the plaintiff does not realize she is injured until after the statute of limitations has run on her claim. The discovery rule does not exist to provide injured parties a continuous cause of action against the party who allegedly injured them. Indeed, injured parties may collect damages for those injuries already sustained and for those which are likely to develop in the future. Providing injured parties with a new accrual date for each subsequent injury resulting from the same tortious behavior would result in a circumnavigation of the statute of limitations. To be sure, Decedent's sickness and untimely death make hers a sympathetic case. However, because the statutes of limitations have run, Plaintiff can prove no set of facts that entitle the Estate to relief. Accordingly, this Court will grant the Defendant's motion to dismiss the breach of warranty, strict liability, and survivor

action claims.

### IV.  WRONGFUL DEATH CLAIM

The District of Columbia requires that plaintiffs bring wrongful death claims within one year of death (D.C. Code § 16-2702), but a survivor may bring a wrongful death action only if the Decedent had an actionable claim at the time of his death. *Nelson,* 26 F.3d at 199. This effectively extends any statute of limitations that may run within the first year of the Decedent's death. *Id*. In sum, a valid wrongful death action is predicated upon the Decedent having a valid, actionable claim at the time of his death. *Id*.

In the instant case, Plaintiff filed the wrongful death claim within one year of the Decedent's death. As discussed *supra*, however, the statutes of limitations for the Decedent's underlying causes of action (breach of warranty, strict liability, and survivor action) ran on January 31, 2002, before Plaintiff filed the instant complaint. As a result, Plaintiff's wrongful death claim stands alone, without an underlying cause of action, and is unactionable. *See Nelson*, 26 F.3d 193. Though some jurisdictions allow wrongful death actions to stand alone, without an underlying cause of action passed down from the decedent, the District of Columbia does not. *Id*. (overruling a District of Columbia U.S. District Court's holding that a survivor could maintain a wrongful death action, though the statute of limitations for the underlying cause of action had run). Because the underlying claims are time-barred and the wrongful death claim stands alone and is thus unactionable, the Court will grant Defendant's motion to dismiss the wrongful death claim.

Finally, even if the District of Columbia were to permit independent wrongful death

actions, the result in this case would remain unchanged. To constitute an actionable claim, the plain language of the Wrongful Death Act requires that "an injury [must be] done or [be] happening within the limits of the District . . . ." D.C. Code § 16-2701. Interpreting this language, this Court dismissed a wrongful death claim when the plaintiff's injuries occurred outside of the District of Columbia. *Perry v. Criss Brothers Ironworks, Inc.*, 741 F.Supp. 985, 986 (D.D.C. 1990). As Plaintiff's injury occurred in Virginia, even if Plaintiff were permitted to bring a wrongful death action without an underlying cause of action, the District of Columbia Wrongful Death statute does not provide Plaintiff a remedy, making dismissal of this claim appropriate.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Rule 12(b)(6), Fed. R. Civ. P., Motion to Dismiss. An appropriate Order accompanies this Memorandum Opinion.

January 23, 2007                              /s/
                                        Thomas F. Hogan
                                           Chief Judge